**Malcolm PIPES, Appellant,**

v.

**D. Scott HEMINGWAY d/b/a Law Offices of D. Scott Hemingway; Greg Bender; SJS Holdings, LLC; FOI Group, LLC; Red River Fiber Optic Corporation; and Carl L. Goodzeit, Appellees.**

**No. 05–11–00277–CV.**

Court of Appeals of Texas, Dallas.

Jan. 19, 2012.

442

Kevin S. Wiley Jr., Law Office of Kevin S. Wiley, Jr., Dallas TX, for Appellant.

D. Scott Hemingway, Hemingway, LLP, Dallas TX, for Appellee.

Before Justices BRIDGES, O'NEILL, and FILLMORE.

## OPINION

Opinion By Justice FILLMORE.

Malcolm Pipes sued D. Scott Hemingway d/b/a Law Offices of D. Scott Hemingway; Greg Bender; SJS Holdings, LLC; FOI Group, LLC; Red River Fiber Optic Corporation; and Carl L. Goodzeit (collectively appellees), as well as Tewari De–Ox Systems, Inc., for conversion. In one issue, Pipes argues the trial court erred by dismissing Pipes's claim against appellees.[1] We affirm the trial court's judgment in part and reverse and remand in part.

## Background

Pipes filed his original petition on November 30, 2009 alleging he had been employed as an attorney by the Law Offices of D. Scott Hemingway (the Law Offices) and Hemingway failed to pay "the full contractual wages" due to Pipes "for work

---

1. Pipes did not appeal the dismissal of his claims against Tewari De–Ox Systems, Inc.

performed as an independent contractor." Pipes sued Hemingway, the Law Offices, and the firm's clients, Bender, SJS Holdings, FOI Group, Red River Fiber Optic, Goodzeit, and Tewari De–Ox Systems, for conversion of these funds.

Appellees and Tewari De–Ox Systems filed a motion to dismiss Pipes's claim on grounds (1) Pipes failed to diligently prosecute his claim; (2) Pipes's claim was barred by res judicata; (3) the trial court did not have jurisdiction over the claim because Pipes filed his petition more than thirty days after the Texas Workforce Commission (TWC) issued a final decision; (4) Pipes accepted the TWC award as an employee and was, therefore, precluded based on an election of remedies from seeking a second recovery as an independent contractor; and (5) the statute of limitations barred Pipes's claim because none of the clients sued by Pipes had paid the Law Offices or Hemingway any fees during the two years preceding service of Pipes's petition. Appellees attached to the motion to dismiss declarations from Goodzeit, Gaven Stener, who works in an unidentified capacity at SJS Holdings, and David Munson, who works in an unidentified capacity at FOI Group. Goodzeit and Stener stated that, after being served with Pipes's petition, they reviewed their records and did not find any payments to Hemingway or the Law Offices between September 3, 2008 and September 3, 2010 relating to work performed by Pipes. Munson stated that, after being served with Pipes's petition, he reviewed his records and did not find any payments to Hemingway or the Law Offices between September 9, 2008 and September 9, 2010 relating to work performed by Pipes.

Appellees also attached to the motion to dismiss a declaration from Hemingway in which he stated that, after being served with Pipes's petition, he reviewed his records and did not find "any payments" made to him or the Law Offices "from September 7, 2008 to September 7, 2010 relating to any work allegedly performed by Mr. Pipes prior to his departure of the firm in October 2007." Hemingway also stated these results "make sense" because neither Red River Fiber Optic nor Tewari De–Ox Systems had paid Hemingway any fees in the last five years for services rendered. Hemingway also stated work performed for Bender and Goodzeit was the subject of a TWC action filed by Pipes.

Appellees also attached to the motion to dismiss a number of documents from the TWC proceedings. Appellees first attached a wage claim filed by Pipes with the TWC in December 2007. In his claim, Pipes indicated he began employment with the Law Offices in November 2000 and was originally paid a salary of $125,000 per year. In March 2007, his compensation changed to $125 per hour on each project billed. He was to be paid after the clients paid for the work. Pipes stated he quit his job in October 2007 due to new employment and problems with compensation. Pipes claimed he did not receive wages from June 1, 2007 through October 5, 2007 and sought unpaid wages of $30,562.50 based on a rate of $125 per hour.

Appellees next attached to their motion to dismiss a Preliminary Wage Determination Order issued by the TWC on July 24, 2008. In his findings and conclusions, the TWC investigator determined Pipes was entitled to $6,920.17 for unpaid wages, was not entitled to $21,767.33 for unpaid wages because Pipes's employer paid the correct amount, and was not entitled to $1,875.00 in wages because, although Hemingway delivered payment to Pipes, Pipes did not benefit from the payment for reasons attributable to Pipes. Hemingway was ordered to pay $6,920.17 to Pipes.

The Order was appealed to the TWC Wage Claim Appeal Tribunal. Appellees attached to their motion to dismiss a March 30, 2009 Texas Payday Law Decision issued by the Appeal Tribunal that modified the Order to require Hemingway to pay Pipes only $358. The Appeal Tribunal made findings of fact that, on January 19, 2007, Hemingway changed Pipes's compensation to $100 per chargeable hour and Pipes was to be paid when Hemingway was paid by the client. Pipes would be paid on the last day of the month or the first day of the following month. The Appeal Tribunal made findings as to the amount Pipes was owed in wages for each month from June 2007 through November 2007 and the amount Pipes was paid for each month. The Appeal Tribunal determined the TWC had jurisdiction "over the period June 16, 2007, to December 13, 2007." Because any wages earned by Pipes in June 2007 became due on June 30, 2007, the TWC took jurisdiction over all wages earned in June. However, because any wages for work performed by Pipes in December 2007 were not due to be paid until the last day of the month, the Appeal Tribunal concluded the TWC did not have jurisdiction over any wages earned by Pipes in December 2007.

Pipes appealed the Appeal Tribunal's decision to the TWC. Appellees attached to their motion to dismiss the TWC's June 4, 2009 findings and decision in which it determined the Appeal Tribunal's decision was correct except (1) it could consider a claim for wages which became due within a short period after December 13, 2007, and (2) Pipes was paid $125 per chargeable hour or one-third of client billings, rather than the $100 per hour found by the Appeal Tribunal. The TWC noted Hemingway invoiced two clients shortly after Pipes filed the wage claim and the wage claim should be amended to include wages which would have been due for payment shortly after December 13, 2007. The TWC ordered Hemingway to pay Pipes $6,902.17 based on his work on matters for Bender and Goodzeit. The findings and decision stated the last day a timely appeal could be filed was June 18, 2009.

On July 2, 2009, Pipes appealed the TWC's decision to the 14th Judicial District Court seeking judicial review of the TWC decision. Appellees attached to their motion to dismiss Pipes's petition in the 14th Judicial District Court in which Pipes alleged Hemingway "failed to account for several payments over the period in which [Pipes] was a contractor" for Hemingway. Pipes also requested billing records and an accounting for funds received on work performed by Pipes that was billed to Hemingway's clients. Finally, appellees attached to the motion to dismiss the 14th Judicial District Court's October 15, 2009 final judgment in which that court found it did not have jurisdiction over Pipes's appeal because the appeal had not been timely filed.

Pipes filed a response to appellees' motion to dismiss and asserted he became an independent contractor for the Law Offices in March 2007. He billed hours on projects for the Law Offices' clients and was not paid for that work. Pipes contended the TWC claim "only reflected [his] status as an employee with Mr. Hemingway and does not preclude [him] from seeking his remedies as an independent contractor for work performed" separate from the wage claim. Pipes argued he was entitled to "receive payments on work performed once a client" paid for the work. Pipes attached to his response a letter from Hemingway dated January 19, 2007 stating Pipes's employment would be on an "as needed" basis and that Pipes would be paid $100 per chargeable hour.

On October 14, 2010, the trial court entered final judgment, granting appellees' motion to dismiss and finding Pipes "is precluded from obtaining any requested relief or past wages" from appellees. On November 12, 2010, Pipes filed a motion for reconsideration and for new trial (motion for new trial). On December 14, 2010, appellees filed a motion to strike the motion for new trial. On January 12, 2011, Pipes filed a notice of appeal. On February 7, 2011, the trial court signed an order granting the motion to strike Pipes's motion for new trial.

## Motion to Dismiss

■ Appellees filed a motion to dismiss this appeal, asserting this Court does not have jurisdiction over the appeal because Pipes failed to file a timely notice of appeal. Appellate jurisdiction is never presumed. *Brashear v. Victoria Gardens of McKinney, L.L.C.*, 302 S.W.3d 542, 546 (Tex.App.-Dallas 2009, no pet.). Unless the record affirmatively shows the propriety of appellate jurisdiction, we must dismiss. *Id.* Without a timely filed notice of appeal, this Court lacks jurisdiction. *See* Tex.R.App. P. 25.1(b); *In re E.M.A.*, No. 05–11–00596–CV, 2011 WL 3672297, at *1 (Tex.App.-Dallas Aug. 23, 2011, no pet.) (per curiam) (mem. op.). When the appellant has not filed in the trial court a timely motion for new trial, motion to modify the judgment, motion to reinstate, or request for findings of fact and conclusions of law, the notice of appeal must generally be filed within thirty days after the judgment or other appealable order is signed. Tex. R.App. P. 26.1. However, when a party timely files a motion for new trial, the time period for filing a notice of appeal is extended to ninety days after the judgment is signed. Tex.R.App. P. 26.1(a)(1).

The trial court signed the final judgment on October 14, 2010. Pipes timely filed the motion for new trial. His deadline for filing a notice of appeal was, therefore, extended to ninety days after the judgment was signed, or until January 12, 2011. Appellees argue that, because the trial court struck Pipes's motion for new trial, Pipes's appellate deadline was not extended and he was required to file a notice of appeal within thirty days of the judgment being signed.

■ A trial court retains jurisdiction over a case for a minimum of thirty days after signing a final judgment. Tex.R. Civ. P. 329b(d); *Lane Bank Equip. Co. v. Smith S. Equip. Inc.*, 10 S.W.3d 308, 310 (Tex.2000). The period of plenary power may be extended by timely filing an appropriate postjudgment motion. *Lane Bank*, 10 S.W.3d at 310. However, the trial court's plenary power cannot extend beyond 105 days after the trial court signs the judgment. *L.M. Healthcare, Inc. v. Childs*, 929 S.W.2d 442, 444 (Tex.1996) (per curiam) (op. on reh'g); *see also* Tex.R. Civ. P. 329b(c), (e). Pipes's timely motion for new trial was overruled by operation of law on December 28, 2010, seventy-five days after the judgment was signed. The trial court, therefore, retained plenary power until January 27, 2011. *See* Tex.R. Civ. P. 329b(c), (e); *Lane Bank*, 10 S.W.3d at 310.

■ The trial court did not sign the order striking Pipes's motion for new trial until February 7, 2011, after it had lost plenary power over the case. Any action taken by a trial court after it loses plenary power is void. *In re Dickason*, 987 S.W.2d 570, 571 (Tex.1998) (per curiam) (orig. proceeding) (order granting new trial after expiration of plenary power is void for want of jurisdiction); *Malone v. Hampton*, 182 S.W.3d 465, 468 (Tex.App.-Dallas 2006, no pet.) ("Judicial action taken after the expiration of the court's jurisdiction is a nullity, and any orders signed outside the

court's plenary jurisdiction are void."). Accordingly, the trial court's order striking Pipes's motion for new trial is void, and Pipes's notice of appeal filed ninety days after the judgment was signed was timely.[2] We deny appellees' motion to dismiss.

## Basis for Ruling

Among other grounds, appellees moved to dismiss the case below based on the trial court's lack of jurisdiction, arguing that, to the extent Pipes was requesting the same relief as he sought in his wage claim with the TWC, this case was an untimely appeal from the TWC action. The trial court did not dismiss the case for lack of jurisdiction, instead determining Pipes was precluded from recovering past wages from appellees. As discussed below, we conclude a portion of Pipes's claim relates to a time period not covered by the wage claim and, therefore, was not an appeal from the TWC proceeding. Accordingly, the trial court did not err by failing to dismiss the case for lack of jurisdiction.

Appellees also requested the trial court dismiss the case for want of prosecution because Pipes failed to serve a number of the defendants. Although the trial court did not state the specific ground on which it granted appellees' motion to dismiss, it found Pipes was precluded from recovering past wages from appellees, a ruling on the merits, and dismissed the case with prejudice. Accordingly, we conclude the trial court did not dismiss the case for want of prosecution. *See Christensen v. Chase Bank USA, N.A.*, 304 S.W.3d 548, 553 (Tex.App.-Dallas 2009, pet. denied) (explaining general rule is that dismissal for want of prosecution is without prejudice to refiling); *Dick Poe Motors, Inc. v.*

*DaimlerChrysler Corp.*, 169 S.W.3d 478, 485 (Tex.App.-El Paso 2005, no pet.) (concluding dismissal for want of prosecution is not trial on the merits and, therefore, dismissal with prejudice is improper). We, therefore, turn to whether the trial court erred by dismissing the case based on res judicata, election of remedies, or the statute of limitations.

## Procedural Posture

As a preliminary matter, we address the procedural posture of this case. Res judicata, election of remedies, and statute of limitations are affirmative defenses. *Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 517 (Tex.1988) (statute of limitations); *France v. Am. Indem. Co.*, 648 S.W.2d 283, 285 (Tex.1983) (election of remedies); *Tex. Highway Dep't v. Jarrell*, 418 S.W.2d 486, 488 (Tex.1967) (res judicata); *see also* TEX.R. CIV. P. 94. An affirmative defense, or "plea in bar," operates to prohibit the assertion of a cause of action and involves the final disposition of a case. *Tex. Underground, Inc. v. Tex. Workforce Comm'n*, 335 S.W.3d 670, 675 (Tex.App.-Dallas 2011, no pet.). An affirmative defense is not typically disposed of in a preliminary hearing, such as in connection with a motion to dismiss. *Id.* Rather, an affirmative defense should be raised through a motion for summary judgment or proven at trial. *Id.* at 676.

Although the trial court's order in this case indicates it dismissed Pipes's conversion claim with prejudice and that Pipes was precluded from recovering any past wages from appellees, appellees did not seek summary judgment on Pipes's claims. Complicating matters, Pipes recognized both in the trial court and in this Court on appeal that appellees' motion to dismiss

2. Appellees assert the trial court held a hearing on the motion to strike on January 26, 2011 while it still retained plenary power and granted the motion to strike at that hearing. The appellate record does not contain a transcript of a hearing on January 26, 2011.

"was ostensibly a Motion for Summary Judgment" and relied on summary judgment law to argue appellees were not entitled to the relief sought in the motion to dismiss. The only complaint Pipes raised in the trial court and on appeal about the procedural vehicle used by appellees to resolve the case was an argument in response to appellees' statute of limitations ground that the motion was premature. Pipes did not complain either in the trial court or on appeal about the lack of a summary judgment motion.

 "[A] speedy and final judgment may be obtained on the basis of matters in bar and without formality of trial on [the] merits, if the parties so agree or if summary judgment procedure is utilized." *Id.* at 676; *see also Briggs v. Toyota Mfg. of Tex.,* 337 S.W.3d 275, 281 (Tex. App.-San Antonio 2010, no pet.). Here, the record does not reflect the parties agreed to dispose of the case without trial or that summary judgment procedure was utilized. However, the dismissal in this case has the same effect as the entry of a take-nothing judgment, and Pipes did not object to the lack of a summary judgment motion in the trial court and does not complain about it on appeal. Accordingly, we will treat the dismissal as a summary judgment. *Briggs,* 337 S.W.3d at 281; *Martin v. Dosohs I, Ltd.,* 2 S.W.3d 350, 354–55 (Tex.App.-San Antonio 1999, pet. denied). We will evaluate the record as if summary judgment was granted to determine whether appellees satisfied their summary-judgment burden. *Henny v. JPMorgan Chase Bank, N.A.,* No. 01–10–00476–CV, 2011 WL 2624010, at *3 (Tex. App.-Houston [1st Dist.] June 30, 2011, no pet.) (mem. op.); *Martin,* 2 S.W.3d at 355.[3]

## Standard of Review

 We review the trial court's decision to grant summary judgment de novo. *Frost Nat'l Bank v. Fernandez,* 315 S.W.3d 494, 508 (Tex.2010), *cert. denied,* —— U.S. ——, 131 S.Ct. 1017, 178 L.Ed.2d 829 (2011). A party moving for traditional summary judgment has the burden to establish that there are no genuine issues of material fact and it is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c); *Provident Life & Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 215–16 (Tex.2003). In determining whether there is a genuine fact issue precluding summary judgment, evidence favorable to the non-movant is taken as true and the reviewing court makes all reasonable inferences and resolves all doubts in the nonmovant's. favor. *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex.2005); *Nixon v. Mr. Prop. Mgmt. Co., Inc.,* 690 S.W.2d 546, 548–49 (Tex.1985). A defendant who conclusively negates at least one essential element of a cause of action or conclusively establishes an affirmative defense is entitled to summary judgment. *Frost Nat'l Bank,* 315 S.W.3d at 508–09.[4]

---

3. Appellees did not file an answer asserting the affirmative defenses of res judicata, election of remedies, or statute of limitations. However, unpleaded affirmative defenses can serve as a basis for summary judgment when the defenses are raised in the summary judgment motion and the opposing party did not object to lack of proper pleadings in either a written response to the motion or before rendition of judgment. *Roark v. Stallworth Oil & Gas, Inc.,* 813 S.W.2d 492, 494–95 (Tex.1991); *see also Via Net v. TIG Ins. Co.,* 211 S.W.3d 310, 313 (Tex.2006) (per curiam) (concluding that when movant responded to unpleaded affirmative defense without objecting, that issue was tried by consent). Pipes did not object to appellees' failure to plead the asserted affirmative defenses and, therefore, the defenses could serve as a basis for the trial court's judgment.

4. Appellees filed an amended motion to dismiss correcting a mistake in a date in the original motion. Appellees did not attach any evidence to the amended motion to dismiss,

## Res Judicata

 Res judicata, or claim preclusion, prevents the relitigation of a claim or cause of action that has been finally adjudicated, as well as related matters that, with the use of diligence, should have been litigated in the prior suit. *Barr v. Resolution Trust Corp.,* 837 S.W.2d 627, 628 (Tex. 1992). Res judicata bars assertion of a claim in a subsequent case when (1) there is a prior final determination on the merits by a court of competent jurisdiction; (2) the parties in the second action are the same or in privity with those in the first action; and (3) the second action is based on the same claims as were raised or could have been raised in the first action. *Travelers Ins. Co. v. Joachim,* 315 S.W.3d 860, 862 (Tex.2010). "The judgment in the first suit precludes a second action by the parties and their privies on matters actually litigated and on causes of action or defenses arising out of the same subject matter that might have been litigated in the first suit." *Id.* (quoting *Gracia v. RC Cola–7–Up Bottling Co.,* 667 S.W.2d 517, 519 (Tex. 1984)).

 Pipes filed his wage claim with the TWC pursuant to the Texas Payday Law. *See* TEX. LAB.CODE ANN. §§ 61.001–.095 (West 2006 and Supp. 2010). The Payday Law provides for administrative review of claims and then for judicial review of final administrative decisions. *Igal v. Brightstar Info. Tech. Grp., Inc.,* 250 S.W.3d 78, 82 (Tex.2008); *UL, Inc. v. Pruneda,* No. 01–09–00169–CV, 2010 WL 5060638, at *7 (Tex.App.-Houston [1st Dist.] Dec. 9, 2010, no pet.) (mem. op.). The Payday Law is not an employee's sole and exclusive remedy for unpaid past wages, but is an alternative remedy that is cumulative of common-law remedies. *Igal,* 250 S.W.3d at 88; *UL, Inc.,* 2010 WL 5060638, at *7. Res judicata generally applies to final wage claim orders of the TWC. *Igal,* 250 S.W.3d at 87.

 "[O]nce a claimant who has alternate proceedings at his disposal to obtain relief available under the Payday Law pursues an administrative claim to a final decision, he forgoes his common law claims." *Id.* at 88. The TWC found Pipes filed his wage claim on December 13, 2007. The TWC had jurisdiction to determine Pipes's wage claim for the 180–day period prior to its filing. *See* TEX. LAB.CODE ANN. § 61.051(c) (West Supp. 2010); *Igal,* 250 S.W.3d at 83. The TWC also amended Pipes's claim to "include wages which would have become due for payment within a short period of time" after December 13, 2007. The record does not reflect the actual ending date used by the TWC in determining past wages due to Pipes. However, for the time period subject to the TWC wage claim, the TWC decided all issues relating to Pipes's wage claim and entered findings as to the amount of wages Pipes had been paid and the amount of wages that was owed to Pipes. Accordingly, res judicata precludes Pipes from asserting any claims for unpaid wages for the time period considered by the TWC.

 Pipes argued in his response to appellees' motion to dismiss that he was entitled to recover "payments on work performed once a client paid" Hemingway and "preserved his claims against any payments that Mr. Hemingway would have received between November, 2007 and No-

but referenced the exhibits attached to the original motion. The trial court may consider all evidence on file at the time of the summary judgment hearing. *Toles v. Toles,* 113 S.W.3d 899, 908 (Tex.App.-Dallas 2003, no pet.). "Evidence attached to an original motion for summary judgment may be considered when a trial court decides an amended motion for summary judgment." *Id.*

vember 2010." [5] Pipes's petition is broad enough to give fair notice of this claim, and appellees filed no special exceptions to require Pipes to narrow his allegations. Any wages owed to Pipes relating to client payments Hemingway or the Law Offices received after the time period considered by the TWC in the wage claim was not determined by the TWC and could not have been determined by the TWC in the administrative action.

We conclude the trial court did not err by determining Pipes was precluded by res judicata from recovering any past wages for work he performed and for which Hemingway or the Law Offices received payment during the time period encompassed by the TWC wage claim. However, any client payments relating to work performed by Pipes and received by Hemingway or the Law Offices after the time period considered by the TWC in the wage claim was not adjudicated by the TWC and is not barred by res judicata.

## Election of Remedies

■■■■ Appellees also asserted they were entitled to dismissal of the lawsuit because Pipes elected his remedy by filing the TWC wage claim and could not recover the same past wages through a common law claim. The affirmative defense of "election of remedies," under certain circumstances, bars a person from pursuing two inconsistent remedies. *See Medina v. Herrera*, 927 S.W.2d 597, 600 (Tex.1996); *Bocanegra v. Aetna Life Ins. Co.*, 605 S.W.2d 848, 850–52 (Tex.1980). The election of remedies doctrine may bar relief when a party successfully exercises an informed choice between two or more remedies which are so inconsistent as to consti-

tute manifest injustice. *Medina*, 927 S.W.2d at 600.

■■■■ The trial court properly concluded Pipes elected a remedy as to past wages for the time period considered by the TWC in determining Pipes's wage claim. However, Pipes did not file a wage claim after the time period considered by the TWC for any client payments received by Hemingway or the Law Offices for work Pipes performed. Accordingly, election of the remedies does not bar Pipes's claims for past wages based on client payments received by the Law Offices or Hemingway after the time period encompassed by the TWC wage claim.

## Statute of Limitations

■■■■ Based on the statute of limitations, appellees requested Pipes's conversion claim be dismissed because, within the two-year period before they were served with Pipes's petition, appellees had not made or received any payment for work performed by Pipes. In his response to the motion to dismiss, Pipes argued the motion was premature because no discovery had been conducted. *See Ford Motor Co. v. Castillo*, 279 S.W.3d 656, 662 (Tex. 2009) (concluding that in case where no formal discovery has been conducted, party could raise need for discovery in response to summary judgment motion). However, Pipes did not obtain a ruling from the trial court on the requested discovery and, therefore, has failed to preserve this issue for appeal. *See* TEX.R.APP. P. 33.1(a)(2)(A).

■■■■ Conversion is the unauthorized and wrongful assumption and exercise of dominion and control over the personal property of another to the exclusion of, or

---

**5.** As noted above, the TWC determined all wages the Law Offices owed Pipes "for a short period of time" after December 13,

2007, not through November 2007 as represented by Pipes.

inconsistent with, the owner's rights. *Waisath v. Lack's Stores, Inc.,* 474 S.W.2d 444, 447 (Tex.1971). To establish a claim for conversion of personal property, a plaintiff must prove (1) he owned or had legal possession of the property or entitlement to possession; (2) the defendant unlawfully and without authorization assumed and exercised control over the property to the exclusion of, or inconsistent with, the plaintiff's rights as an owner; (3) he demanded return of the property; and (4) the defendant refused to return the property. *Khorshid, Inc. v. Christian,* 257 S.W.3d 748, 759 (Tex.App.-Dallas 2008, no pet.). A person must bring suit for the conversion of personal property "not later than two years after the day the cause of action accrues." TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a) (West Supp. 2010). Generally, the limitations period for a conversion claim begins to run at the time of the unlawful taking. *Autry v. Dearman,* 933 S.W.2d 182, 193 (Tex. App.-Houston [14th Dist.] 1996, writ denied).

■ For limitations purposes, the issue is not whether appellees made or received payment for work performed by Pipes in the two years prior to being served with the lawsuit, but whether they made or received payment for work performed by Pipes within two years preceding the filing of the lawsuit.[6] We will, therefore, consider whether appellees met their burden of conclusively establishing they did not make or receive any payments for work performed by Pipes during the relevant time period. In support of their argument, appellees submitted evidence establishing Hemingway and the Law Offices

did not receive payment after September 7, 2008 from any clients for work performed by Pipes. They also submitted evidence that neither Goodzeit nor SJS Holdings made payments to Hemingway or the Law Offices after September 3, 2008 for any work performed by Pipes. Pipes did not submit any contradictory evidence.

■ As set out above, Pipes's conversion claim is barred by res judicata and election of remedies for any past wages for the time period considered by the TWC in determining Pipes's wage claim. Appellees had the burden to conclusively negate an element of Pipes's conversion claim relating to any payments they received or made after the time period considered by the TWC. They met this burden as to Goodzeit and SJS Holdings beginning on September 3, 2008 and as to the other clients beginning on September 7, 2008, and the trial court did not err by dismissing Pipes's conversion claim beginning on those dates. However, appellees offered no evidence addressing whether any payments for Pipes's work was made or received during the approximately nine-month period between the conclusion of the time period considered by the TWC in the wage claim and September 3, 2008 for Goodzeit and SJS Holdings and September 7, 2008 for the other clients. Accordingly, appellees did not conclusively establish they did not receive or send payment during that interim time period for work performed by Pipes, and the trial court erred by dismissing Pipes's claim relating to that period of time.

---

6. We recognize that merely filing a lawsuit is not sufficient to avoid the expiration of the statute of limitations and that a timely filed suit will not interrupt the running of limitations unless the plaintiff exercises due diligence in the issuance and service of citation. *See Rodriguez v. Crutchfield,* 301 S.W.3d 772, 775 (Tex.App.-Dallas 2009, no pet.). However, appellees premised their statute of limitations argument on not making or receiving any payments for Pipes's work during the two-year period preceding service of the lawsuit, not on Pipes's alleged failure to use due diligence in serving appellees.

We reverse the trial court's judgment dismissing Pipes's conversion claim for any fees paid or received by appellees (1) after the time period considered by the TWC in determining Pipes's wage claim and before September 3, 2008 for work performed by Pipes for Goodzeit and SJS Holdings, and (2) after the time period considered by the TWC in determining Pipes's wage claim and before September 7, 2008 for work performed by Pipes for Bender, FOI Group, and Red River Fiber Optic and remand that claim to the trial court for further proceedings. In all other respects, the trial court's judgment is affirmed.

